UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11451-RWZ

JOHN J. CURLEY and FLATSPIKES, LLC

v.

SOFTSPIKES, LLC, *et al.*

MEMORANDUM OF DECISION

June 21, 2010

ZOBEL, D.J.

Plaintiff John Curley ("Curley"), an expert in the design of athletic shoe cleats,

created several cleat designs that incorporated his patented technology for defendant

Softspikes, LLC ("Softspikes"), a manufacturer of golf shoe cleats.[1]  In 1999, Softspikes

purchased those patents and related intellectual property in exchange for, among other

compensation, a royalty on the sale of each cleat utilizing the patented technology.

Curley says the company subsequently wronged him by patenting intellectual property

that he still owned and by stopping royalty payments.  He and his company, Flatspikes,

LLC, bring this 20-count lawsuit against Softspikes, Softspikes' current owner Pride

Manufacturing Company, LLC ("Pride"), Pride's CEO Rand Krikorian and COO Joseph

Zeller, and the named inventor on the disputed patents Farris McMullin.[2]  Defendants

Softspikes and Pride (the "Defendants") move to dismiss.

---

[1]The complaint is not entirely clear about the timing of the transformation of
Softspikes from a corporation to an LLC, but that fog does not affect the outcome.

[2]The individual defendants have not been served.

I.    **Background**

Softspikes, Inc., approached plaintiff Curley in early 1998 and asked him to design an "index cleat" that would interface with the company's proprietary cleat attachment system.[3]  Index cleats have an asymmetric design and the attachment system must orient the cleats in the correct direction.  Curley possessed particular expertise in the design of index cleats; he designed them for two athletic shoe manufacturers and founded his own cleat technology company, the plaintiff Flatspikes, LLC.

Curley developed a cleat design in response to Softspikes' request and, in July 1998, subject to a non-disclosure agreement he disclosed his "Manta" cleat project on which he held several patents and had pending patent applications.  Softspikes purchased this intellectual property in October 1999.  The Asset Purchase Agreement ("APA", Docket # 10 ex. 2) conveyed the rights to the patents and applications as well as all intellectual property "relating to or derived from . . . the Patents [and applications], and existing on the date hereof."  (APA §1(A).)  Plaintiffs received a cash payment and right to royalties on the sale of cleats utilizing the patented technology.

 In August of 1998, before the APA was signed, Curley presented a redesigned Manta cleat to Softspikes in preparation for the company's meeting with FootJoy, a manufacturer of golf shoes.  Curley made further revisions to the Manta design in

---

[3] Although every paragraph in the fact section of the complaint recites that it is "upon information and belief," the court takes as true all well-pleaded facts in the amended complaint.  Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009).

January 2000 and provided several more variations to Softspikes in August in preparation for another meeting with FootJoy.  FootJoy did not adopt the designs.

Plaintiffs accuse Softspikes, which at some point in these events converted from a corporation to a LLC (Complaint ¶ 46, Docket # 1), of filing four patent applications (and ultimately receiving patents) based, at least in part, on intellectual property owned by Curley.  These patents list defendant McMullin, about whom the complaint contains no further facts, as the sole inventor.  Plaintiffs also claim that Softspikes and Pride, which purchased Softspikes in 2003, ceased paying royalties, without cause, in the fourth quarter of 2008.

Plaintiffs sued in 2009 with a 20-count complaint that claims: (1) breach of contract by Softspikes and Pride; (2-6) declaratory judgments of patent invalidity, asserted against Softspikes and McMullin; (7-10) patent infringement by Softspikes and Pride; (11) tortious interference with contractual relations by Softspikes and Pride; (12) misappropriation of trade secrets by Softspikes, Pride, and McMullin; (13) conversion by Softspikes, Pride, and McMullin; (14) unjust enrichment by Softspikes, Pride, and McMullin; (15) intentional infliction of emotional distress by Zeller and Krikorian; (16) breach of the implied covenant of good faith and fair dealing by Softspikes and Pride; (17) violation of Mass. Gen. Laws ch. 93A; (18-19) breach of contract by Softspikes and Pride; (20) an accounting, against Softspikes and Pride.

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6).  They argue, first, that a forum selection clause in the APA applies to all counts and requires that they be brought in Maryland, and, in the alternative, that there are other count-specific failings.[4]

## II.    Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The facts must allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct.  Id.  A simple recitation of elements, or statements of legal conclusion, will not suffice.  Id.

### A.    Forum Selection Clause

The APA contains a forum selection clause which specifies that any suit "relating to any term or provision hereof shall be brought only in the courts of Montgomery County, Maryland or the United States District Court for the District of Maryland."  (APA § 9(D).)  The clause also specifies that the contract shall be interpreted and enforced pursuant to Maryland law.  Plaintiffs argue that (1) this clause is not enforceable; (2) if it is enforceable a different clause governing assignments should control; and (3) some of the counts do not relate to the APA.

---

[4]Defendants briefly argue for the dismissal of count 15, but count 15 is not brought against Softspikes or Pride so it is not discussed in this order.

1.    **Enforcement**

Forum selection clauses are prima facie valid and will be enforced unless the

resisting party can show that enforcement would be unreasonable or unjust.[5]  Rivera v.

Centro Medico de Turabo, Inc., 575 F.3d 10, 18 (1st Cir. 2009) (citing M/S Bremen v.

Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).  Plaintiffs argue that enforcement would

be unjust because no party is located in Maryland.[6]  Softspikes, formerly headquartered

in Maryland, now resides in Tennessee.

The fact that no party resides in the chosen forum is not, per se, a reason to void

a forum selection clause.  See, e.g., Bremen, 407 U.S. at 3, 19 (holding clause

requiring an American corporation and a German corporation to litigate in a London

court is enforceable absent evidence plaintiff would be deprived of a meaningful day in

court).  Maryland retains a connection to this litigation because the APA will be

interpreted under Maryland law, and the complaint creates no plausible inference that

---

[5]It is an unsettled issue whether federal or state law determines the
reasonableness of a forum selection clause in a diversity action or when the court
exercises supplemental jurisdiction over state law claims.  Rivera, 575 F.3d at 16.  This
lawsuit includes state law claims, but the court need not decide whether state or federal
law applies because Massachusetts courts apply the Bremen reasonableness standard
when determining whether to enforce a forum selection clause.  Cambridge Biotech
Corp. v. Pasteur Sanofi Diagnostics, 740 N.E.2d 195, 201 (Mass. 2000).

[6]Plaintiffs also ask the court to deny the motion to dismiss under the doctrine of
forum non conveniens, in reliance on Stewart Org. v. Ricoh Corp., 487 U.S. 22 (1988).
Stewart applied a 28 U.S.C. § 1404 analysis when defendant moved to transfer based
upon a forum selection clause.  Forum non conveniens is a discretionary tool for the
district court to dismiss a claim where the forum is so inconvenient as to be seriously
unfair.  Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007).  Defendants have not
moved to transfer, and plaintiffs do not move to dismiss, so neither analysis is relevant
here.

the burden on plaintiffs in bringing litigation in Maryland now exceeds what was contemplated when the APA was signed.  Plaintiffs assert that likely third-party witnesses may be located in Massachusetts and litigation here would be more convenient; assuming this is so, it was obvious when the APA was signed that litigation could implicate evidence located outside of Maryland.  Finally, there is no suggestion that enforcing the forum selection clause would effectively deprive plaintiffs of their day in court.  <u>Bremen</u>, 407 U.S. at 18.  Plaintiff willingly signed a contract requiring that all APA-related litigation occur in Maryland and nothing has occurred in the intervening years to render enforcement against the plaintiffs unreasonable.

### 2.    The Controlling Contract Clause

Plaintiffs invoke a clause in the APA that places certain restrictions on Softspikes' right to assign ownership of the intellectual property.  (APA § 3(B)(iv).)  Any contract assigning the rights must require the assignee to assume all obligations of the buyer under the APA and expressly name plaintiffs as third-party beneficiaries.

Plaintiffs argue that an assignment occurred when Softspikes converted from a corporation to an LLC thus moving this lawsuit out from under the scope of the forum selection clause.  However, Softspikes still exists.  While Softspikes, Inc., is now Softspikes, LLC, the change in structure does not imply or dictate that it also brought about assignment of rights.  Delaware law, which governs corporate matters for both entities, allows a business entity to convert from a corporation to an LLC while retaining all rights, privileges, liabilities, and duties.  Del. Code tit. 8, § 266 (2000).  Moreover, plaintiffs implicitly acknowledge that no assignment occurred with the three counts

asserting breach of the APA.  They do not sue, as third-party beneficiaries, for beach of any assignment contract.

### 3.    Counts That Relate to the APA

Counts 1, 18, and 19 allege breach of the APA. Counts 7-10, for patent infringement, concern intellectual property sold in the APA.  (Complaint ¶ 65.)  Count 13, for conversion, incorporates the allegations regarding a breach of the APA.  Count 16 alleges that the breach of the APA violated the covenant of good faith and fair dealing.  Count 20 seeks an accounting for unpaid royalties due, at least in part, under the APA.  All of these counts directly relate to the APA and therefore fall within the scope of the forum selection clause.  They must be brought in Maryland.

Counts 2-6 allege that certain Softspikes patents are invalid because they incorporate Curley's intellectual property and do not list him as an inventor.  The complaint states that this property, which also concerns index cleat technology, was disclosed in 1998, well before the APA was signed.  This presents the question of fact whether the property relates to the patents sold in the APA and was thus conveyed in the APA.  These counts therefore fall within the scope of the forum selection clause.

Counts 11, 12, 14, and 17 all incorporate the allegations regarding a breach of the APA and the disputed patents.  However, plaintiffs clarify in their response (Pls.' Opp'n 18, Docket # 14) that these counts concern intellectual property that Curley shared with Softspikes after the APA was signed.  They therefore do not relate to the APA.

**B.      Tortious Interference (Count 11)**

The elements of a claim for tortious interference with a contractual relationship are (1) a contract between plaintiff and a third party; (2) defendant knowingly induced the third party to break the contract; (3) defendant's interference was improper in motive or means; and (4) plaintiff was harmed by defendant's act.  <u>Alba v. Sampson</u>, 690 N.E.2d 1240, 1243 (Mass. App. Ct. 1998); <u>see</u> <u>G.S. Enters., Inc. v. Falmouth Marine, Inc.</u>, 571 N.E.2d 1363, 1369 (Mass. 1991).  Plaintiffs make only the conclusory allegation that Defendants contracted directly with unidentified parties who otherwise would have contracted with Curley.  There is no mention of a contract between plaintiff and a third party or even of negotiations of such a contract.  The motion to dismiss count 11 is allowed.

**C.      Misappropriation of Trade Secrets (Count 12)**

This common-law claim requires plaintiff to establish that he possessed a trade secret and defendants either breached a duty not to disclose or wrongfully used that secret.  <u>Jet Spray Cooler, Inc. v. Crampton</u>, 385 N.E.2d 1349, 1354 (Mass. 1979).  The complaint states that plaintiffs were aware that Curley's post-APA disclosures would be shared with FootJoy, so there can be no breach of a duty not to disclose.  Plaintiffs do not allege that Defendants (including McMullin) otherwise used the post-APA information.  Any claim for mis-use of information in the five disputed patent applications, as already noted, falls within the scope of the APA.

### D.      Unjust Enrichment (Count 14)

There are two elements to an unjust enrichment claim: (1) plaintiff provided defendant with something of value; and (2) reasonably expected to be compensated. See Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 106-07 (D. Mass. 1990).  This equitable remedy is available only if there was no contract.  Boswell v. Zephyr Lines, Inc., 606 N.E.2d 1336, 1342 (Mass. 1993).  Plaintiffs do not allege that they were uncompensated for the post-APA disclosures.  To the extent this count relies on unjust enrichment for Defendants in the form of the five disputed patents, it, too, falls within the scope of the APA.

### E.      Chapter 93A (Count 17)

Plaintiffs assert violations of §§ 2, 9, and 11 of chapter 93A.  Section 2 does not contain a cause of action.  Plaintiffs have not complied with the pre-suit notice requirement of § 9.  Section 11 claims require, as an element, the loss of money or property.  All allegations regarding the loss of money or property concern the nonpayment of royalties and the disputed patents and fall within the scope of the APA.  Accordingly, plaintiffs' § 11 claim is also not viable.

### III.     Defendants Zeller, Krikorian, and McMullin

These defendants have not been served and more than 120 days have passed since the complaint was filed.  Fed. R. Civ. P. 4(m).  Plaintiffs have 14 days to show good cause why all counts against these parties should not be dismissed.

## IV.    Conclusion

Softspikes' motion to dismiss (Docket # 9) is ALLOWED.  Pride's motion to dismiss (Docket # 17) is ALLOWED.[7]


_____June 21, 2010_____                    _____/s/Rya W. Zobel_____
            DATE                                            RYA W. ZOBEL
                                            UNITED STATES DISTRICT JUDGE

---

[7]Pride's motion to dismiss incorporates by reference the arguments in Softspikes' motion to dismiss.